Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com
clayton@oberpekas.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elsa C. Neves, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>Avnet Inc. Long Term Disability Plan, an ERISA benefit plan; Liberty Life Assurance Company of Boston, a plan fiduciary; and Avnet Inc., plan sponsor and plan administrator,<br><br>Defendants. | No.<br><br>**COMPLAINT** |

For her claims against Defendants Avnet Inc. Long Term Disability Plan (the "Plan"), Liberty Life Assurance Company of Boston ("Liberty"), and Avnet Inc. ("Avnet") (collectively, "Defendants"), Plaintiff Elsa C. Neves ("Ms. Neves") alleges as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by Avnet for coordinating and administering welfare benefits for its eligible employees, including long-term disability ("LTD") benefits.

3. Avnet is the Plan Sponsor, Plan Administrator, Plan fiduciary, and Employer.

4. Avnet and the Plan have their principal place of business in the State of Arizona.

5. Avnet fully insures LTD benefits under the Plan with a Liberty insurance policy, Number GF3-860-066398-01 (the "Policy").

6. Liberty has its principal place of business in the State of Massachusetts.

7. Liberty is licensed and authorized to do business in Maricopa County, Arizona, and/or resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

8. Liberty administered LTD benefits under the Plan and is a Plan fiduciary.

9. Ms. Neves is a resident of Maricopa County, Arizona and was at the time of the events leading to this lawsuit.

10. Avnet employed Ms. Neves.

11. As an Avnet employee, Ms. Neves was a Plan participant and beneficiary entitled to LTD benefits under the Plan.

12. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

13. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

14. Ms. Neves satisfied all of the jurisdictional prerequisites to filing this lawsuit, and her claims are timely before this Court.

## GENERAL ALLEGATIONS

### *Ms. Neves's Employment*

15. Avnet employed Ms. Neves for approximately 24 years.

16. As of her last day of work in May 2017, Ms. Neves worked as a Solutions Sales Representative.

17. The position of Solutions Sales Representative is sedentary, but has significant cognitive demands.

### *Plan Language*

18. In order to be eligible for disability benefits, "during the Elimination Period and the next 24 months of Disability [Ms. Neves], as a result of Injury or Sickness, [is] unable to

-2-

perform the Material and Substantial Duties of [her] Own Occupation."

19. The Plan defines Own Occupation as "[Ms. Neves's] occupation that [she] was performing when [her] Disability or Partial Disability began." When "determining Disability under this [P]lan, Liberty will consider [her] occupation as it is normally performed in the national economy."

20. After 24 months of Own Occupation benefits, the Plan defines Disability as "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."

21. The Plan defines "Any Occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

22. The Plan defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

23. The Plan includes benefits for Partial Disability for when a Covered Person is employed and earning between 20% and 80% of her Basic Monthly Earnings.

24. Partial Disability benefits also include a Work Incentive, which provides that during the first 24 months that a Covered Person has returned to work, she will continue to receive the full monthly benefit amount and after 24 months the monthly benefit will be prorated based on the following formula: Monthly benefit = (Basic Monthly Earnings – actual earnings)/(Basic Monthly Earnings) x Monthly Benefit Amount, until the Covered Person earnings reached a certain level.

25. "Basic Monthly Earnings" means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include discretionary bonuses, overtime pay and extra compensation other than target incentive and shift differential. Target incentive and shift differential will be calculated by the Sponsor and reported to Liberty.

-3-

26. On the annual anniversary of benefit payments "Basic Monthly Earnings" is replaced with "Indexed Monthly Earnings" and increased by the lesser of 7% or the Consumer Price Index.

27. "Indexed Basic Monthly Earnings" means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

28. The Plan also provides a Rehabilitation Incentive Benefit, which provides an increased benefit while claimant participates in a Liberty approved Rehabilitation Program which may include: physical therapy; occupational therapy; work hardening programs; functional capacity evaluations; psychological and vocational counseling; rehabilitative employment; and vocational rehabilitation services.

### *Ms. Neves's Disability Claim*

29. Ms. Neves is disabled due to headaches, chronic fatigue, fibromyalgia, and cognitive impairments all of which are well documented in her medical records.

30. Ms. Neves's diagnoses are supported by: Dr. Paul Snyder, Mayo Clinic; Dr. David C. Patchett, primary care physician; Dr. Odette Houghton, Mayo Clinic; Dr. Karissa Arca, Mayo Clinic; Jeri Young, OT, Mayo Clinic; Christina Karolzak, N.P., Mayo Clinic; and two physical therapists, Selen Sonuparlak and Susan Meland.

31. Her physical symptoms and cognitive impairments are supported by objective medical evidence including: office visit notes, lab results, diagnostic testing, and pharmacy records.

32. Ms. Neves's treating providers have prescribed multiple medications to treat the symptoms of her disabilities.

33. Ms. Neves's physical symptoms and cognitive impairments prevent her from performing the duties of her Own Occupation or Any Occupation.

34. Ms. Neves's functional capacity is sedentary.

35. Liberty approved and paid short-term disability ("STD") through August 25, 2017, which was the maximum benefit period.

36. At the end of the STD period, Liberty transitioned her claim to its LTD department.

37. Liberty referred Ms. Neves's file for a "vocational review."

38. Liberty did not disclose to Ms. Neves when or to whom Liberty referred the file, or the reviewer's qualifications.

39. Liberty's "vocational review" concluded, without explanation, that the typical physical demands of Ms. Neves's own occupation may be performed as sedentary or light duty work.

40. Liberty also stated that jobs existed at both levels of physical demand, but did not identify any jobs.

41. In a letter dated October 25, 2017 (the "Denial"), Liberty denied Ms. Neves's claim for LTD benefits.

42. Ms. Neves timely appealed the Denial on November 20, 2017.

43. Ms. Neves's appeal included new medical evidence from: Dr. Snyder; Dr. Patchett; Dr. Karissa Arca; Dr. Timothy Ingall, Mayo Clinic; David Osborne, PhD., Mayo Clinic; Susan Meland; Jeri Young; and Christina Karolzak.

44. Ms. Neves's appeal also included literature about fibromyalgia.

45. The medical evidence submitted with her appeal confirmed continued headaches, fibromyalgia, persistent elevated inflammatory markers; revealed deficits in her nonverbal cognitive processing speed; and showed she was unable to return to work through January 2, 2018.

46. Liberty referred Ms. Neves's appeal for a "physician peer review" to an unidentified physician, who acknowledged that Ms. Neves suffers from chronic fatigue, headaches, depression, and weakness, but dismissed Ms. Neves's symptoms for lack of "definitive diagnoses," and concluded that none of her medical conditions imposed any restrictions or limitations.

47. Liberty also referred Ms. Neves's file for another vocational review and again did not identify the reviewer or his qualifications.

48. The second vocational review concluded that Ms. Neves's own occupation could be performed as sedentary or light work, but again did not identify any jobs and did not provide any evidence to support these conclusions.

49. In a letter dated January 5, 2018, Liberty denied Ms. Neves's appeal (the "Final Denial").

50. The Final Denial relied on the post-appeal peer review and post-appeal vocational review, which Ms. Neves did not have an opportunity to challenge.

51. Ms. Neves cannot perform the material duties of her Own Occupation or Any Occupation and therefore comes within the definition of Disability under the Plan.

52. Ms. Neves exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of Plan Benefits)**
**(All Defendants)**

53. All previous paragraphs are incorporated by reference.

54. The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Neves is no longer disabled under the terms of the Plan.

55. Ms. Neves is disabled from her Own Occupation and Any Occupation.

56. Ms. Neves has claimed the benefits under the Plan to which she is entitled.

57. Ms. Neves reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reached age 65 or until she was no longer disabled.

58. Despite the coverage of Ms. Neves's Disability, Liberty and the Plan improperly denied her LTD benefits in breach of the Plan and ERISA.

59. Liberty's and the Plan's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

60. Although the Policy states Liberty has discretion with respect to claims and appeals, and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was

delegated in accordance with the terms of the Plan.

61. On information and belief, the Plan does not reserve discretion to the Plan Administrator, does not contain terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Liberty.

62. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Neves is informed and believes that Liberty makes claims decisions based on the claims resources and financial risk it faces on certain claims.

63. Liberty wrongfully denied Ms. Neves's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

64. Liberty did not properly consider all of the available evidence when terminating Ms. Neves's benefits.

65. Liberty failed to conduct a full and fair review.

66. Upon information and belief, Liberty did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Ms. Neves's administrative appeals process, or at least used employees who were managed by the same person(s) and who were orchestrating the denial according to Claim Discussion directives. *See* 29 C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

67. Liberty routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

68. Liberty unreasonably withheld relevant information and documents.

69. Liberty failed to properly consider the opinions of Ms. Neves's treating and examining physicians.

70. Upon information and belief, Liberty used in-house reviewers in evaluating Ms. Neves's claim, because it knew that the in-house reviewers' recommendations would favor a denial of Ms. Neves's benefits.

71. The peer reviewer arbitrarily formed an opinion based on insufficient evidence or investigation.

72. The peer reviewer was not given the Plan or other important records for reaching its decision that Ms. Neves could perform work.

73. Liberty intentionally gathered evidence to support a denial of Ms. Neves's claim for benefits.

74. Ms. Neves alleges upon information and belief that Liberty has a parsimonious claims handling history.

75. Liberty failed to conduct a "meaningful dialogue" regarding Ms. Neves's claim.

76. Under the *de novo* standard of review, to be entitled to benefits Ms. Neves need only prove by a preponderance of the evidence that she is disabled.

77. Even under the abuse of discretion standard of review, Liberty abused its discretion, because its decision denying Ms. Neves's disability benefits was arbitrary and capricious and was caused or influenced by Liberty's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

78. Ms. Neves is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Liberty's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Neves's LTD claim.

79. Under the *de novo* standard of review, Ms. Neves is entitled to discovery regarding, among other things, the credibility of Liberty's medical reviews and Liberty's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the *de novo* standard of review,

-8-

new evidence may be admitted regarding, among other things: "the credibility of medical experts [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

80. Pursuant to the coverage provided in the Plan, ERISA 29 U.S.C. § 1132(a)(1)(B), and applicable federal law, Ms. Neves is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

81. Ms. Neves is entitled to any other employee benefits that were denied, terminated, discontinued, or suspended as a result of the denial of her disability benefits.

82. Pursuant to 29 U.S.C. § 1132(g), Ms. Neves is entitled to recover her attorneys' fees and costs incurred herein.

83. Ms. Neves is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Liberty)**

84. All other paragraphs are incorporated by reference.

85. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

86. Liberty is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Neves.

87. ERISA requires Liberty to provide Ms. Neves an opportunity for a full and fair review of any adverse benefit decision.

88. Under 29 U.S.C. § 1104(a), Liberty is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

89. ERISA requires a "meaningful dialogue" between a claims administrator and a beneficiary. Under 29 C.F.R. § 2560.503(g)(iii), when a plan administrator denies a claim, the

notification must provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." It must also be relayed in a manner calculated to be understood by the claimant.

90. Liberty's Denial did not inform Ms. Neves of what additional material or information was necessary to perfect her claim. Instead, Liberty provided a generic list of types of medical records.

91. Liberty's Denial also failed to properly inform of her rights under ERISA.

92. Liberty stated that Ms. Neves's "written request for review must be sent within 180 days of receipt of [the Denial]," but 29 C.F.R. § 2560.503-1(h)(3)(i) and (h)(4) require that a claimant be provided "at least 180 days" to submit an appeal.

93. Liberty also stated that if Ms. Neves's appeal was not submitted within 180 days she would lose her right to appeal.

94. Liberty's Denial is dated October 25, 2017. Even if delivered to Ms. Neves that day, she was entitled to, at least, April 23, 2018 to submit her appeal and supplement the evidence supporting her claim. *See* 29 C.F.R. § 2560.503-1(h)(3)(i) and (h)(4) (requiring that at least 180 days be allowed to submit an appeal).

95. After Ms. Neves submitted her appeal, before she received Liberty's decision on her appeal, but still within the 180 days allowed for her appeal, Ms. Neves consulted with counsel.

96. Ms. Neves's counsel contacted Liberty and requested that Liberty suspend its review of Ms. Neves's appeal and allow her until April 23, 2018 to supplement her appeal with additional evidence.

97. Liberty refused to suspend its review of Ms. Neves's appeal or to allow her the full 180 days to submit evidence in support of her appeal.

98. Instead of affording Ms. Neves the full 180-day appeal period, Liberty asserted it had "conducted a full and fair appeal review" and ERISA did not require it to permit Ms. Neves to submit additional evidence within the 180-day appeal period.

99. Liberty misinformed Ms. Neves of her right to review relevant documents as provided by 29 C.F.R. § 2560.503-1(j)(3) and (m)(8).

100. Under 29 C.F.R. § 2560.503-1(j)(3) and (m)(8), Ms. Neves had the right to review and "document, record, or other information" that was "relied upon in making the benefit determination," "submitted, considered, or generated in the course of making the benefit determination, **without regard to whether such document, record, or other information was relied upon in making the determination**," "demonstrates compliance with the administrative process and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination," or that "constitutes a statement of policy or guidance with respect to the plan concerning the denied . . . benefit." 29 C.F.R. § 2560.503-1(m)(8) (emphasis added).

101. Instead of informing Ms. Neves of her right to review "relevant" documents, Liberty only stated that Ms. Neves had a right to review "pertinent claim file documents upon which the denial of benefits was based."

102. Significantly, the Department of Labor changed its regulation from "pertinent" documents to "relevant" documents more than 15 years ago, at which time, it refined the scope of documents to which a claimant is untitled.

103. Liberty's Denial's description of "pertinent" documents significantly understates the scope of information and documents available to Ms. Neves for her appeal under the current ERISA regulations.

104. Liberty's misstating ERISA regulations and quoting of language from outdated regulation is a breach of fiduciary duty.

105. Under ERISA, Liberty is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

106. Liberty breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

107. Liberty's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Liberty's claims handling was discharged imprudently and caused Ms. Neves harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

108. To the extent that Liberty's denial of benefits caused Ms. Neves harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

109. On information and belief, Liberty instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

110. Ms. Neves is informed and believes that Liberty's employees are trained in administering claims in the best interests of Liberty, not Plan participants.

111. On information and belief, Liberty breached its fiduciary duty to Ms. Neves by terminating her claim in an effort to avoid its financial liability.

112. Ms. Neves has "other equitable relief" available to her in several forms.

113. The Court has broad discretion to fashion appropriate relief and should mold the relief necessary to protect the rights of the participants.

114. Ms. Neves is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

115. She is entitled to enjoin any act or practice by Liberty and Avnet that violate ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

116. The Court can mandate that Liberty conduct a full and fair review by providing to Ms. Neves the time required under the regulations to submit evidence in support of her appeal.

117. The Court can mandate that Liberty revise its correspondence to properly represent current ERISA regulations.

118. The Court can mandate that Liberty provide all "relevant documents."

119. Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Neves's benefits for its own profit.

120. As a direct and proximate result of the breaches of fiduciary duty, Ms. Neves suffered actual, significant financial harm and has incurred financial expense.

121. Ms. Neves is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

122. Pursuant to 29 U.S.C. § 1132(g), Ms. Neves is entitled to recover her attorneys' fees and costs incurred herein.

**WHEREFORE**, Ms. Neves prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Neves's rights to future benefits under the terms of the Plan;

C. Injunctive relief;

D. All other equitable relief that is proper as a result of Liberty's breach of fiduciary duty;

E. An award of Ms. Neves's attorneys' fees and costs under 29 U.S.C. § 1132(g);

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 24th day of May, 2018.

                OBER PEKAS RONSTADT

                By: *s/ Kevin Koelbel*
                    Erin Rose Ronstadt
                    Kevin Koelbel
                    Clayton W. Richards
                    Attorneys for Plaintiff

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745